Case No._____

# United States Court of Appeals for the Federal Circuit

IN RE ZEBRA TECHNOLOGIES CORPORATION,

*Petitioner.*

*On Petition for a Writ of Mandamus to the United States District Court for the Western District of Texas Case No. 6:23-cv-00292-ADA Honorable Alan D Albright*

## NON-CONFIDENTIAL APPENDIX IN SUPPORT OF PETITION FOR A WRIT OF MANDAMUS

STEVEN D. MOORE
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 273-4741
smoore@ktslaw.com

MICHAEL T. MORLOCK
ANDREW N. SAUL
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
(404) 815-6500
mmorlock@ktslaw.com
asaul@ktslaw.com

*Counsel for Petitioner*

AUGUST 9, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**

**Short Case Caption**   In Re  Zebra Technologies Corporation

**Filing Party/Entity**   Zebra Technologies Corporation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/09/2024

Signature: /s/ Steven D. Moore

Name: Steven D. Moore

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Zebra Technologies Corporation | | Vanguard Group Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable      ☐ Additional pages attached

| | | |
|---|---|---|
| Steve R. Borgman, Kilpatrick Townsend & Stockton LLP ⊞ | | |
| April E. Isaacson, Kilpatrick Townsend & Stockton LLP ⊞ | | |
| Sarah Y. Kamran, Kilpatrick Townsend & Stockton LLP | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☑ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable      ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ................................................... 3

RELIEF SOUGHT ............................................................................ 4

ISSUE PRESENTED ........................................................................ 4

FACTUAL BACKGROUND ............................................................. 4

I.    ZEBRA HAS SUBSTANTIAL CONNECTIONS TO EDNY,
      AND ITS LOCATION IN WDTX IS IRRELEVANT TO THE
      ACCUSED PRODUCTS. ........................................................... 4

II.   IV HAS NO CONNECTIONS TO WDTX. ............................... 8

III.  THE DISTRICT COURT IN THIS CASE DENIED
      TRANSFER TO EDNY. ............................................................ 8

ARGUMENT ................................................................................... 10

I.    MANDAMUS IS PROPER WHEN A DISTRICT COURT
      HAS CLEARLY ABUSED ITS DISCRETION IN DENYING
      A MOTION TO TRANSFER. .................................................. 10

II.   ZEBRA HAS A CLEAR AND INDISPUTABLE RIGHT TO
      MANDAMUS RELIEF. ............................................................ 13

      A.    The Threshold Requirement for Transfer Under
            Section 1404(a) Was Met. ............................................. 13

      B.    The District Court Clearly Erred in Analyzing
            and Weighing Three of the Relevant Factors. ........... 13

            1.    The Cost of Attendance for Willing
                  Witnesses Factor Is Not "Neutral"—It
                  Strongly Favors Transfer. ................................... 14

i

2.      The Availability of Compulsory Process
        Factor Favors Transfer, or, at Most, is
        Neutral. ..................................................................... 22

3.      The "All Other Practical Problems" Factor
        Does Not Weigh Against Transfer—It Is
        Neutral. ..................................................................... 27

CONCLUSION ................................................................................. 28

Portions of pages 6, 7, 14-16, 19, and 21 have been omitted from the nonconfidential version of the present Petition, pursuant to the District Court's Amended Standing Order Regarding Filing Documents Under Seal and Redacted Public Versions, and the Protective Order issued by the District Court. *See* Appx0001-0025. The omitted portions contain confidential licensing information of Intellectual Ventures I LLC and Intellectual Ventures II LLC.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amazon.com, Inc.*,
 No. 2022-157, 2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) ..........................12

*In re Apple Inc.*,
 No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ...........................13

*In re Apple Inc.*,
 No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022), *cert.
 denied*, 143 S. Ct. 206 (2022) ..............................................................................12

*In re Apple Inc.*,
 No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022).............................12

*In re Atlassian Corp.*,
 No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ...........................13

*In re Chamber of Com.*,
 105 F.4th 297 (5th Cir. 2024) ..............................................................................11

*In re Google LLC*,
 2023 WL 1425780 ..................................................................................................21

*In re Google LLC*,
 58 F.4th 1379 (Fed. Cir. 2023) ...........................................................................12

*In re Google LLC*,
 No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...........................13

*In re Google*,
 No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021).......................9, 23

*In re Honeywell Int'l Inc.*,
 No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024)........................12, 27

*Honeywell Int'l Inc. v. Zebra Techs. Corp.*,
 No. 6:21-cv-1010-ADA, 2022 WL 2161058 (W.D. Tex. June 15,
 2022) (Albright, J.) ......................................................................................10, 24

iii

*LoganTree LP v. Apple Inc.*,
  No. 6:21-CV-00397-ADA, 2022 WL 1491097 (W.D. Tex. May 11,
  2022) (Albright, J.) ..............................................................................25

*MemoryWeb, LLC v. Samsung Elecs. Co.*,
  No. W-21-CV-00411-ADA, 2022 WL 2195025 (W.D. Tex. June
  17, 2022) (Albright, J.) .......................................................................25

*In re Microsoft Corp.*,
  No. 2023-128, 2023 WL 3861078 (Fed. Cir. June 7, 2023)...............12

*Parus Holdings, Inc. v. Microsoft Corp.*,
  No. 6:21-CV-00570-ADA, 2022 WL 17420391 (W.D. Tex. Dec.
  4, 2022) (Albright, J.) .........................................................................25

*In re Quest Diagnostics Inc.*,
  No. 2021-193, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021) ............13

*In re Samsung Elecs. Co., Ltd.*,
  2 F.4th 1371 (Fed. Cir. 2021) ..............................................2, 3, 10, 27

*In re Samsung Elecs. Co.*,
  No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) ............12

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .....................................................10, 11

*In re Volkswagen Grp. of Am, Inc.*,
  28 F.4th 1203 (Fed. Cir. 2022) ...........................................................12

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (en banc) .......................3, 10, 11, 12, 13

*Webroot, Inc. v. AO Kaspersky Lab*,
  No. W-22-CV-00243-ADA-DTG, 2024 WL 171705 (W.D. Tex.
  Jan. 16, 2024) (Gilliland, J.) ...............................................................24

**Statutes**

28 U.S.C. § 1295 ...........................................................................................3

28 U.S.C. § 1404 ...............................................................................4, 5, 12

iv

28 U.S.C. § 1404(a) ..................................................................................10, 11, 13

28 U.S.C. § 1651 ..................................................................................................3

## <u>INTRODUCTION</u>

The District Court's Order denying transfer of this patent infringement action against Petitioner Zebra Technologies Corporation ("Petitioner" or "Zebra") from the Western District of Texas ("WDTX") to the Eastern District of New York ("EDNY") rests upon a clearly erroneous analysis of the three factors it found dispositive.

***First***, after venue discovery, the Plaintiffs below, Intellectual Ventures I LLC and Intellectual Ventures II LLC (together, "IV"), agreed to withdraw their infringement allegations against five of the more than 150 accused products that were designed in Zebra's Austin, Texas office in WDTX. The District Court ignored this agreement and nonetheless held that six of Zebra's Texas-based employees who worked on those now-***unaccused*** products "absolutely had relevant knowledge." Appx0031. The District Court's error in overlooking the agreed scope of the infringement case led it to consider the "willing witness" factor neutral. But this factor instead strongly favors transfer, since the only other willing witnesses were those Zebra pointed to, including EDNY-based Zebra employees such as Charles Bolen, who worked on the more than 150 products IV ***actually*** accuses of infringement. Appx0029-0031.

1

**Second**, the District Court contravened both this Court's precedent and its own by crediting as relevant dozens of Texas-based third-parties IV identified through only unauthenticated LinkedIn profiles. The Court relied on this faulty evidence, weighing it over the evidence of third-parties in EDNY and elsewhere that Zebra identified, to hold that the "compulsory process" factor weighed against transfer rather than favoring transfer or, at most, being neutral. Appx0034.

**Third**, the Court held that the factor relating to other practical problems weighed against transfer based upon the presence of a co-pending action in WDTX involving the same two patents and several others. But as this Court has held, a co-pending suit involving overlapping patents cannot justify a denial of transfer when, as here, no other factors weigh against transfer. *See In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379-80 (Fed. Cir. 2021).

Based upon its erroneous analysis, the District Court found that two factors favored transfer (ease of access to sources of proof and local interest in having the issue decided at home), two factors weighed against transfer (erroneously, availability of compulsory process and other practical problems), and the rest (including, erroneously, willing

2

witnesses) were neutral. Appx0036-0037. Had the District Court considered IV's agreement that products designed in Zebra's Austin office were no longer accused and applied precedent holding LinkedIn profiles not probative in the transfer analysis, it would have found instead that at least three factors (including the willing witnesses factor) favored transfer, and that the compulsory process factor either favored transfer or at most was neutral, rather than weighing against transfer. Moreover, the only other factor the District Court considered to weigh against transfer, the presence of a co-pending action in WDTX cannot, on its own, prevent transfer. *Samsung*, 2 F.4th at 1371.

These clear factual and legal errors on three of the *Volkswagen II* factors demonstrate that the District Court clearly abused its discretion in denying transfer. This Court should order the District Court to transfer this action to EDNY, where the products actually accused of infringement are designed and the relevant witnesses reside.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651. The underlying patent action arose under Title 35, giving this Court exclusive appellate jurisdiction under 28 U.S.C. § 1295.

## RELIEF SOUGHT

Zebra respectfully requests a writ of mandamus reversing the District Court's July 9, 2024 Order denying Zebra's motion to transfer venue from WDTX to EDNY under 28 U.S.C. § 1404. Appx0026.

## ISSUE PRESENTED

Whether the District Court clearly abused its discretion in finding that EDNY is not clearly more convenient by ignoring IV's agreement to withdraw accusations of infringement against the few products designed in Zebra's Austin, Texas offices and by relying on uncorroborated LinkedIn profiles, in view of Zebra's showing that the witnesses knowledgeable about the products that IV accused of infringement reside in or near EDNY, and given that IV has no presence in WDTX nor reliably identified any potential witnesses there.

## FACTUAL BACKGROUND

### I.    ZEBRA HAS SUBSTANTIAL CONNECTIONS TO EDNY, AND ITS LOCATION IN WDTX IS IRRELEVANT TO THE ACCUSED PRODUCTS.

IV asserts two patents against Zebra, specifically accusing more than 150 products such as tablets of infringement based upon those products' alleged compliance with 802.11n/ac/ax Wi-Fi standards and/or

4

the LPDDR4/4X/5 standards for memory data exchange (the "Accused Products"). Appx0298-0305; Appx0309-0314. The relevant Zebra business units for the Accused Products, including the engineering and product development teams, are based in Holtsville, New York in EDNY and Mississauga, Ontario, near New York State. Appx0169. Indeed, the Accused Products were principally designed and developed by Zebra employees in Holtsville and Mississauga, who would be the likely witnesses at trial for Zebra concerning those products. *Id.* For example, Charles Bolen, Zebra's Vice President of Advanced Markets & Technologies, is located in Holtsville in EDNY and is a likely trial witness concerning the Accused Products. Appx0168.

Although Zebra also maintains an office in Austin, Texas in WDTX, Zebra's Austin office and the employees based there have no relevant knowledge concerning the 150+ Accused Products. Appx0242 (72:21-74:7); Appx0249-0250 (100:20-101:3); Appx0297; Appx0294-0295; Appx0288. Initially, only five of the more than 150 products IV accuses of infringement were designed in the Austin office (specifically, five Windows-based handheld tablets), and Zebra argued in its Motion to Transfer that this small number compared to the total products at issue

meant that the more relevant witnesses were located in or near EDNY. Appx0139-0141; Appx0169-0170.

However, this question soon became moot. During venue discovery, Zebra demonstrated that the few Windows-based tablet products IV initially accused that were designed in Austin utilized Wi-Fi modules supplied by ████ which holds a license to the Asserted Patents. Appx242 (72:21-74:7) ("A: And [the Windows-based products] are the ones that are worked on in the Austin office. Q: And those Windows based machines, what wireless chipset do they have? It's a module provided by ████"); Appx0249-0250 (100:20-101:3); Appx0294-0295. At IV's request, Zebra even provided a post-deposition declaration from its venue deponent, Mr. Bolen, affirming the same.[1] Appx0293-0295. Faced with this undisputed evidence, IV had no other choice than to agree, which it did in writing, that it would no longer accuse those Austin-designed products of infringement. Appx0288 (confirming "that these products will be

---

[1] The same declaration also averred that a sixth Windows-based tablet, although not employing an ████ Wi-Fi module, was developed by an OEM in Finland and thus has no connection to Zebra's Austin office and was not designed there as previously believed. Appx0295. Indeed, the program manager who worked with the Finnish OEM is based out of Zebra's office in Holtsville, New York, in EDNY. *Id.*

CONFIDENTIAL MATERIAL REDACTED

removed from IV's infringement contentions"). Zebra highlighted this agreement for the Court in its Reply to its Motion to Transfer after IV, which had already agreed to withdraw those products, failed to mention it in its Opposition, and Zebra argued that the Court therefore need not consider whether the small number of Austin-designed products affected the venue analysis.[2] Appx0281-0282.

In addition, most of Zebra's relevant documents related to the design, development, and testing of the Accused Products, including the selection and integration of the relevant chipsets into the Accused Products, are located either internationally, or domestically in Franklin Park, IL, Mt. Prospect, IL, and Holtsville, NY, or on cloud servers. Appx0171-0172.

Additionally, several key third-party witnesses with knowledge of relevant prior art, such as Junyi Li, Vladimir Parizhsky, and Sundeep Rangan—all currently or formerly of Qualcomm, are located in or near

---

[2] Even though IV's agreement caveated that it "reserves the right to explore Mr. Bolen's representations during fact discovery" (Appx0288), it has not taken any discovery on this topic, let alone uncovered any evidence showing that the Austin-designed products have Wi-Fi modules from any supplier other than ██licensee██ Indeed, as noted below, Zebra has reconfirmed at IV's request, as the sworn and documentary evidence shows, that they do not.

EDNY. Appx0161-0167. Moreover, the relevant functionality in the Accused Products was developed not by Zebra itself but by third party chip manufacturers such as Qualcomm and Synaptics, and resides on chipsets installed in the Accused Products. Appx0169. Thus, other relevant third-party witnesses are at Qualcomm located in San Diego, California, and at Synaptics located in San Jose, California. Appx0151-0160. Further, the inventors of the two asserted patents are located in either Florida or California. Appx0315; Appx0336.

## II.    IV HAS NO CONNECTIONS TO WDTX.

IV is a pair of Delaware corporations with their principal place of business in the State of Washington. Appx0043. IV has not identified any presence by IV or any IV witness in WDTX.

## III.    THE DISTRICT COURT IN THIS CASE DENIED TRANSFER TO EDNY.

The District Court held that Zebra "failed to show that the EDNY is a clearly more convenient venue." Appx0037. The District Court decided that two of the venue transfer factors applied by the Fifth Circuit weigh in favor of transfer, two factors weigh against transfer, and four factors are neutral. Appx0036-0037.

Specifically, the District Court determined that the interest in having localized interests decided at home factor and the relative ease of access to source of proof both weigh in favor of transfer. Appx0036. The District Court found that the cost of attendance of willing witnesses factor was neutral, among three other factors, based on a mistaken understanding that six of Zebra's Texas-based employees, who worked on products *not accused* due to IV's agreement to withdraw them, nonetheless "absolutely had relevant knowledge." Appx0029-0031. Even though Zebra had highlighted in its Reply Brief IV's agreement to withdraw its claims against the few Austin-designed products at issue, the Court's Order did not mention or analyze this agreement.

Finally, the District Court found two factors weighed against transfer: the availability of compulsory process to secure the attendance of witnesses factor, and the all other practical problems factor. Appx0036. With respect to the compulsory process factor, the District Court ignored both this Court's and its own case law which declines to accord evidentiary weight to uncorroborated LinkedIn profiles, and relied solely on IV's submission of dozens of such profiles from individuals purportedly in Texas to outweigh Zebra's showing of third-party witnesses in EDNY

9

and elsewhere. Appx0034; *In re Google*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021); *Honeywell Int'l Inc. v. Zebra Techs. Corp.*, No. 6:21-cv-1010-ADA, 2022 WL 2161058, at *4 (W.D. Tex. June 15, 2022) (Albright, J.). And, with respect to the other practical problems factor, the District Court cited a co-pending action against Lenovo as justifying retaining the case, and thus ignored this Court's precedent that the existence of a related suit in the district is insufficient to tip the scales against transfer absent any other reasons to do so (as should have been the Court's analysis here). Appx0034; *Samsung*, 2 F.4th at 1379-80.

## ARGUMENT

### I.    MANDAMUS IS PROPER WHEN A DISTRICT COURT HAS CLEARLY ABUSED ITS DISCRETION IN DENYING A MOTION TO TRANSFER.

Under Fifth Circuit law, which applies here,[3] "[t]here can be no doubt" that "mandamus is an appropriate means of testing a district court's § 1404(a) ruling." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). A petitioner seeking mandamus relief must show that (1) it has "no other adequate means to attain the relief [it] desires"; (2) its right to issuance of the writ is "clear

---

[3] *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

and indisputable"; and (3) "the writ is appropriate under the circumstances." *Id.* at 311 (citation omitted); *see also In re Chamber of Com.*, 105 F.4th 297, 311 (5th Cir. 2024).

The first requirement is satisfied here because "it is clear under Fifth Circuit law that a party seeking mandamus for a denial of transfer clearly meets the 'no other means' requirement." *In re TS Tech USA Corp.*, 551 F.3d at 1322; *see also In re Chamber of Com.*, 105 F.4th at 311.

As to the second and third requirements, "mandamus will be granted upon a determination that there has been a clear abuse of discretion." *Volkswagen II*, 545 F.3d at 309; *see also In re Chamber of Com.*, 105 F.4th at 311-12. A district court clearly abuses its discretion if its reliance on erroneous factual findings or conclusions of law, or its misapplication of law to fact, produces a "patently erroneous result." *Volkswagen II*, 545 F.3d at 310; *see also In re Chamber of Com.*, 105 F.4th at 311.

The district court's exercise of discretion must be evaluated in view of the law governing § 1404(a) transfers. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

11

division where it might have been brought[.]" The remedy under §
1404(a) "is simply a transfer of the case within the federal system to
another federal venue more convenient to the parties, the witnesses, and
the trial of the case." *Volkswagen II*, 545 F.3d at 313. The plaintiff's choice
of venue has no weight as "an independent factor" in the analysis, merely
serving as a reminder that it is the movant who bears the burden of
showing good cause for transfer. *Id.* at 314-15, 314 n.10. "When the
movant demonstrates that the transferee venue is clearly more
convenient, . . . it has shown good cause and the district court should
therefore grant the transfer." *Id.* at 315.

This Court has granted mandamus relief from WDTX Orders
denying § 1404 transfers on numerous occasions. *See, e.g., In re
Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26,
2024); *In re Samsung Elecs. Co.*, No. 2023-146, 2023 WL 8642711 (Fed.
Cir. Dec. 14, 2023); *In re Microsoft Corp.*, No. 2023-128, 2023 WL 3861078
(Fed. Cir. June 7, 2023); *In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023);
*In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072 (Fed. Cir. Dec.
15, 2022); *In re Apple Inc.*, No. 2022-137, 2022 WL 1676400 (Fed. Cir.
May 26, 2022); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768 (Fed.

Cir. Apr. 22, 2022), *cert. denied*, 143 S. Ct. 206 (2022); *In re Volkswagen Grp. of Am, Inc.*, 28 F.4th 1203 (Fed. Cir. 2022); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021); *In re Atlassian Corp.*, No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021); *In re Google LLC*, No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021); *In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757 (Fed. Cir. Nov. 10, 2021).

## II.   ZEBRA HAS A CLEAR AND INDISPUTABLE RIGHT TO MANDAMUS RELIEF.

### A.   The Threshold Requirement for Transfer Under Section 1404(a) Was Met.

Neither party disputed, and the District Court found, that the action could have been brought in EDNY. Appx0028. Thus, the threshold determination in the § 1404(a) analysis was met and is not at issue here.

### B.   The District Court Clearly Erred in Analyzing and Weighing Three of the Relevant Factors.

The District Court clearly abused its discretion because it made legally and factually erroneous rulings on three of the *Volkswagen II* convenience factors—namely, the cost of attendance of willing witnesses factor, the availability of compulsory process to secure the attendance of witnesses factor, and the all other practical problems factor. Appx0028-

0031; Appx0033-0034. These errors caused the District Court to erroneously conclude that two factors weighed in favor of transfer, two against, and the rest were neutral. When correctly analyzed, at least three factors strongly weigh in favor of transfer and none against. Thus, Zebra has a clear and indisputable right to mandamus relief to require transfer of this case to EDNY.

>    1.    **The Cost of Attendance for Willing Witnesses Factor Is Not "Neutral"—It Strongly Favors Transfer.**

IV has no connection to WDTX. *See* Factual Background, Section II, *supra*. And, because of IV's agreement that it is no longer accusing any of Zebra's ▮licensee▮-based products, Zebra's Austin, Texas office is not a relevant source of proof, either. *See* Factual Background, Section I, *supra*. Zebra highlighted this fact at length in its Reply Brief in support of its Motion to Transfer. Appx0281-0283. The District Court ignored IV's agreement, never mentioning it in its Order and erroneously finding this factor neutral. Appx0026. Instead, the willing witnesses factor strongly favors transfer because the Zebra witnesses most knowledgeable about the Accused Products are in or near EDNY.

CONFIDENTIAL MATERIAL REDACTED

a) **Zebra Presented Evidence that Its Austin-Developed Products Use Licensed [licensee] Technology, and IV Dropped Those Products.**

After Zebra filed its Motion to Transfer arguing that only a few of the more than 150 products IV had accused were designed in its Austin office, IV conducted venue discovery, which resulted in evidence that the few Austin-designed products, Windows-based tablets, all used [licensee]-supplied Wi-Fi modules. Appx0242 (72:21-74:7); Appx0249-0250 (100:20-101:3); Appx0294-0295. As a result of prior licenses granted to [licensee] under the patents-in-suit, IV stated that it would no longer accuse of infringement any products that employ a Wi-Fi module provided by [licensee] Appx0288. Zebra provided deposition testimony and, at IV's request, a declaration swearing that, unlike the more than 150 Accused Products designed in or near EDNY, the few Windows-based tablets designed in Zebra's Austin office in WDTX use [licensee] Wi-Fi modules. Appx0289; Appx0294-0295. IV thereafter agreed that those Windows-based tablets designed in Austin were no longer accused of infringement. Appx0288.

Zebra explained all of these facts in its Reply Brief in support of its Motion to Transfer. Appx0281-0283. However, the District Court did not address any of these events in its Order, instead erroneously finding that

CONFIDENTIAL MATERIAL REDACTED

six Texas-based Zebra employees "absolutely had relevant knowledge," despite IV's agreement that the Austin-designed products were no longer accused of infringement. Appx0031. The District Court clearly erred in relying upon these six employees, and in ignoring Mr. Bolen and the many other witnesses in or near EDNY who worked on the more than 150 products that were actually accused of infringement.

While IV's agreement to remove the Austin-designed products reserved a right to confirm in discovery that those products actually used ████ modules, IV has taken no discovery since its agreement that calls that fact into question. As to two of the five Austin-designed products, IV recently asked Zebra whether they used modules provided by a different, unlicensed supplier, but Zebra had previously provided documentary evidence, consistent with Mr. Bolen's testimony and declaration, that they used ████ modules, and responded reconfirming this undisputed fact. Thus, IV has not uncovered any evidence to question (and all the sworn evidence is uniform) that the five Austin-designed tablets use ████ Wi-Fi modules. This center of gravity of this case thus relates to the 150+

products designed in or near EDNY, not the five that were previously accused but now have been dropped that were designed in WDTX.[4]

> **b)** **Zebra Does Not Design the Chips that Implement the Accused Functionality, But Zebra's Knowledge Is Located In or Near EDNY.**

The District Court also based its decision on what it termed an "obvious contradiction," specifically that Petitioner claims "'the vast majority of relevant witnesses are located in or near the EDNY' because that is where most of the development occurred but at the same time claiming that the accused functionality in Zebra's products were 'developed not by Zebra, but rather by third parties such as Qualcomm and Synaptic.'" Appx0029-0030.

But there is no contradiction, and certainly nothing that would render Zebra's EDNY-based witnesses less relevant. IV's infringement

---

[4] IV may reference, in its response to this Petition, Narendra Patel who was the Program Manager for just two tablets among the more than 150 products that are still accused. Narendra Patel has resided in the Austin, Texas area since August 2022. Appx0170. Prior to moving to Austin, Narendra Patel worked out of Zebra's Mississauga, Canada office for 7.5 years. *Id.* Narendra Patel has no knowledge regarding the design or operation of the third-party chips which implement the alleged infringing standards and was not involved in Zebra's selection of those chips. Appx0171.

contentions are directed to various computing products' alleged compliance with the 802.11n/ac/ax Wi-Fi standards, or the LPDDR4/4X/5 standards for memory data exchange. Appx0298-0305. These standards are implemented in chips used in both the Zebra tablets that are no longer accused and in the 150+ Accused Products. Although Zebra's employees may not be the most knowledgeable witnesses concerning the functionality of **_third-party components_** (such as chips) that implement these standards, Zebra's employees in or near EDNY, such as Charles Bolen, Zebra's Vice President of Advanced Markets & Technologies, are knowledgeable about the Accused Products' design including their use of those components and their integration into the overall products. Appx0169. And, of course, IV will demand not just technical evidence concerning alleged infringement, but also evidence concerning Zebra's marketing, sales, and financials pertaining to the Accused Products. This information is in the hands of Zebra employees located in or near EDNY notwithstanding that chip companies elsewhere (also outside WDTX) developed the specifically accused functionality in components used by Zebra in the Accused Products. Appx0171-0172.

18

CONFIDENTIAL MATERIAL REDACTED

Moreover, the same logic that the District Court used to apparently discount the relevancy of Zebra's EDNY-based witnesses would equally apply to Zebra's Austin-based employees, whom the District Court said "absolutely had relevant knowledge" even though they, like the EDNY-based witnesses, likewise did not develop the chips that implemented the standards at issue. But unlike the Austin-based employees the Court identified, who worked on products that IV dropped from its infringement contentions (because they use ██licensee██ chips), the Zebra employees in EDNY and nearby such as Mr. Bolen have relevant knowledge of all of the the Accused Products.[5]

---

[5] None of the other reasons the District Court provided for its neutral finding on this factor holds water. *First*, the District Court listed six individuals (Patrick Seidensticker, Qiwu Tan, Ravi Subbarao, Dennis Barrett, Harold Reeves, and John Banks) who it found "absolutely had relevant knowledge." Appx0031. However, the first four individuals are based in Zebra's Austin office, which as discussed, has no relevance to this case given IV's agreement to remove those products. Appx0269. And, per the LinkedIn profiles IV relies upon, Mr. Reeves and Mr. Banks reside outside of WDTX. Appx0271; Appx0274. Regardless, IV never sought testimony concerning these two individuals from Petitioner's venue deponent, and so offers nothing but LinkedIn-based speculation. *See* Appx0225-0267.

### c)    There Was No Discovery "Obfuscation."

The District Court also incorrectly criticized Zebra for what it perceived as an "obfuscation Zebra's counsel chose to employ for venue discovery related to this motion." Appx0030-0031. However, even though this issue is irrelevant given IV's agreement that none of the Austin-designed Zebra products is accused of infringement, there was no obfuscation during discovery. Indeed, IV never moved to compel with respect to any venue discovery issues.

The District Court's criticism was based on its belief that, "[d]espite IV requesting a list of all employees working in Texas and only being provided a list of a few engineering employees in Austin, 'Mr. Bolen testified that another more comprehensive list existed, and he had used it to prepare his declaration.'" Appx0030-0031. The District Court cites only IV's briefing on this point but even there it cites only half of the sentence IV used. Indeed, the District Court ignored that in ***the very same sentence*** IV makes clear that Zebra ***provided to IV*** the "more comprehensive list" following Mr. Bolen's deposition. Appx0187; Appx026. IV never sought further discovery concerning venue from Mr.

CONFIDENTIAL MATERIAL REDACTED

Bolen or otherwise as to that list. Thus, this criticism is factually inaccurate, and in no way supports the District Court's findings.

> **d)** **Zebra's Texas Employees, Including the 23 IV Listed from LinkedIn, Have No Unique Relevant Knowledge Concerning the Accused Products.**

The District Court also criticized Zebra's disclosure of Texas-based employees because IV cited to twenty-three (23) LinkedIn profiles of individuals allegedly working for Zebra in Texas that did not appear on the list Zebra provided to IV during discovery. Appx0187. While this issue also is not relevant in view of IV's agreement that the Austin-designed products are not accused of infringement, the District Court's criticism is based on its erroneous belief that "IV request[ed] a list of all employees working in Texas." Appx0186-0187.

But IV's discovery requests did not ask for such a broad list, instead demanding "Documents sufficient to identify each of Your officers, employees, and agents (including contract or remote employees) *who currently work or have ever worked on the Accused Products* in the state of Texas …" Appx0203-0204. Zebra provided the very list IV requested, naming Texas-based employees having any involvement with the products that IV then (before dropping the licensee-based ones designed

in Austin) accused of infringement. Appx0212. IV never requested a list of every Zebra employee in the State of Texas. Thus, IV's LinkedIn submissions prove nothing.

Overall, "the district court should have weighed this factor ***firmly … in favor of transfer***" rather than neutral. *In re Google LLC*, 2023 WL 1425780, at *3 (emphasis added) (ordering transfer where Google had eleven party witnesses in California and at most three in Texas).

## 2. The Availability of Compulsory Process Factor Favors Transfer, or, at Most, is Neutral.

The District Court also found that the factor that examines which venue may use compulsory process to require non-party witnesses to attend trial weighed against transfer. Appx0034. However, IV offered only LinkedIn profiles of numerous individuals it contended, without further support, were both relevant and located in Texas, and unwilling to testify absent subpoena. Appx0218-0233. The District Court ignored the case law both from this Court and the District Court declining to accord evidentiary weight in the transfer analysis to uncorroborated, publicly available LinkedIn profiles. Appx0279-0281.

Specifically, IV included with its Response Brief dozens of LinkedIn profiles relating to former Zebra and Qualcomm employees that,

according to the profiles, lived in Texas, and that IV contended had some relevant knowledge. Appx0218-0233. IV declined to seek discovery from Zebra about these individuals or to depose any of these individuals at all, and thus offered nothing but speculation about those individuals' presence in Texas, willingness to travel for trial, and possession of relevant information. Yet, the District Court relied on the LinkedIn profiles as "confirming" that the individuals had knowledge relevant to the infringement issues at trial. Appx0031.

In so doing, the District Court held that these uncorroborated LinkedIn profiles outweighed evidence that Zebra offered about non-party witnesses in EDNY and elsewhere. Specifically, Zebra pointed to prior art inventors Junyi Li, Vladimir Parizhsky and Sundeep Rangan, all currently or formerly of Qualcomm, and located in or near EDNY. Appx0138. Zebra also noted that other relevant third-party witnesses are at Qualcomm located in San Diego, California, and at Synaptics located in San Jose, California, and that the inventors of the two asserted patents are located in either Florida or California. *Id.*

That the District Court accorded IV's LinkedIn profiles evidentiary weight cannot be squared with ***this Court's*** refusal to accord weight to

uncorroborated statements on publicly available LinkedIn profiles. *See, e.g.*, *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) (reversing WDTX's application of "decisive weight" to a potential witness because the plaintiff's only support for the witness's potential relevance amounted to speculation based on the witness's LinkedIn page, which indicated a job title relating to the accused products).

Moreover, in finding this factor weighed against transfer because of IV's LinkedIn profiles, the District Court also ignored its own precedent, which is consistent with this Court's. In another case involving Zebra in 2022, the District Court rejected such an approach to the venue calculus and transferred the case from WDTX to EDNY. *See Honeywell Int'l Inc. v. Zebra Techs. Corp.*, No. 6:21-cv-1010-ADA, 2022 WL 2161058, at *4 (W.D. Tex. June 15, 2022) (Albright, J.) ("Plaintiffs found these potential witnesses on LinkedIn and were unable to elicit from Zebra's corporate representative any testimony that these personnel possess relevant information. The Court has little confidence, then, that these potential witnesses have relevant and material knowledge." (internal citation omitted)); *see also Webroot, Inc. v. AO*

*Kaspersky Lab*, No. W-22-CV-00243-ADA-DTG, 2024 WL 171705, at *8 (W.D. Tex. Jan. 16, 2024) (Gilliland, J.) ("These . . . employees were found and described … based solely on their LinkedIn profiles. … This Court and the Federal Circuit have allocated 'no weight' to witnesses found on LinkedIn who are proffered without specific information." (internal citations omitted)); *MemoryWeb, LLC v. Samsung Elecs. Co.*, No. W-21-CV-00411-ADA, 2022 WL 2195025, at *4 (W.D. Tex. June 17, 2022) (Albright, J.) ("Plucking self-serving names from geographically restricted LinkedIn searches rarely suffices to prove arguments for or against transfer."); *LoganTree LP v. Apple Inc.*, No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *6-7 (W.D. Tex. May 11, 2022) (Albright, J.) ("LoganTree identified several Texas-based Apple employees who it proposes have relevant and material knowledge; LoganTree almost certainly identified these witnesses by conducting no other research but searching LinkedIn…. The convenience of these witnesses is owed no weight."); *Parus Holdings, Inc. v. Microsoft Corp.*, No. 6:21-CV-00570-ADA, 2022 WL 17420391, at *5 (W.D. Tex. Dec. 4, 2022) (Albright, J.) ("Parus asserts that '[p]ublic information shows that each of these employees have knowledge of Microsoft's AI functionality, including the

25

infringing voice virtual assistant Cortana.' … But this is not enough to show that these witnesses possess knowledge relevant to the alleged infringement." (alteration in original) (internal citation omitted)).

The District Court also labeled it "incredulous" that Zebra asked it to discount IV's reliance on LinkedIn profiles, because it noted that "Zebra's own representative used LinkedIn to prepare his testimony." Appx0031 (citing Appx0238 (55:3-5); Appx240 (61:6-7)). However, Mr. Bolen, Zebra's representative, did not testify he used LinkedIn to determine, as IV did, an individual's location and relevance to this case. Rather, Mr. Bolen testified he used LinkedIn: (1) as a double-check (along with a telephone directory) for whether his list of Zebra employees in Texas was complete, and (2) to determine which company may currently employ a former Zebra employee. Appx0238 (55:3-5); Appx240 (61:6-7). Such uses do not condone IV's reliance upon LinkedIn as sole support for its theory that certain non-party witnesses are in Texas, unwilling to testify at trial absent subpoena, and have knowledge relevant to the disputed issues in this case.

The District Court's finding that the compulsory process factor weighs against transfer thus amounts to a clear abuse of discretion.

### 3.    The "All Other Practical Problems" Factor Does Not Weigh Against Transfer—It Is Neutral.

The District Court found that this factor weighs against transfer solely because IV maintains a related suit in WDTX, against Lenovo Group Limited ("LGL"). Appx0034. The LGL case, however, involves a different defendant and different products, as well as several patents not asserted in this case, and so it is "likely that [this] case[] will result in significantly different discovery, evidence, proceedings, and trial." *Samsung*, 2 F.4th at 1379-80 (citation omitted); Appx0349-475. As in *Samsung*, "[o]nly two of the patents in [this] case[] overlap with those in the action brought against [LGL]." *Id.* Indeed, the LGL case involves five asserted patents, three of which do not overlap at all with the patents asserted against Zebra. Appx0363; Appx0387; Appx0413.

Once the other transfer factors are assessed based on the record and under governing law, any "incremental gains" the District Court would otherwise find in keeping the case in WDTX "are not sufficient to justify overriding the inconvenience to the parties and witnesses." *Id.*; *see also In re Honeywell Int'l Inc.*, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024). Thus, the practical problems factor cannot, given the numerous factors favoring transfer and in the absence of any other factors properly

27

weighing against transfer, justify the District Court's denial of transfer to EDNY.

For all of these reasons, the District Court clearly abused its discretion in finding the willing witnesses factor neutral, finding the compulsory process factor weighs against transfer, and finding the practical problems factor weighs against transfer based solely on the co-pending LGL case.

## <u>CONCLUSION</u>

The Court should issue a writ of mandamus directing the District Court to transfer venue to EDNY.

August 9, 2024

*/s/ Steven D. Moore*
STEVEN D. MOORE
KILPATRICK TOWNSEND
& STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, California 94111
(415) 576-0200
smoore@ktslaw.com

MICHAEL T. MORLOCK
ANDREW N. SAUL
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

mmorlock@ktslaw.com
asaul@ktslaw.com

*Attorneys for Petitioner*

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF SERVICE

**Case Number** _____

**Short Case Caption** IN RE ZEBRA TECHNOLOGIES CORPORATION

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on ___08/09/2024___

by  ☑ U.S. Mail   ☐ Hand Delivery   ☐ Email   ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Brian M. Seeve | Prince Lobel Tye LLP<br>One International Place<br>Boston, MA 02110 |
| Jonathan DeBlois | Prince Lobel Tye LLP<br>One International Place<br>Boston, MA 02110 |
| Matthew D. Vella | Prince Lobel Tye LLP<br>2094 South Coast Highway, Suite 5C<br>Laguna Beach, CA 92651 |
| Robert R. Gilman | Prince Lobel Tye LLP<br>One International Place<br>Boston, MA 02110 |
| Karl Anthony Rupp | Sorey & Hoover LLP<br>One Liberty Place<br>100 N. 6th Street, Ste. 502<br>Waco, TX 76701 |

☑ Additional pages attached.

Date: ___08/09/2024___

Signature: /s/ Steven D. Moore

Name: Steven D. Moore

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** _____

**Short Case Caption** IN RE ZEBRA TECHNOLOGIES CORPORATION

> **NOTE:** Proof of service is only required when the rules specify that service must
> be accomplished outside the court's electronic filing system.  See Fed. R. App. P.
> 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  08/09/2024

by    ☑    U.S. Mail    ☐    Hand Delivery    ☐ Email    ☐ Facsimile
      ☐    Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Judge Alan D. Albright | U.S. District Court Western District of Texas<br>800 Franklin Avenue, Room 301<br>Waco, TX  76701 |
|  |  |
|  |  |
|  |  |
|  |  |

☐     Additional pages attached.

Date:  08/09/2024

Signature:     /s/ Steven D. Moore

Name:     Steven D. Moore

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19<br>July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** _____

**Short Case Caption:** <u>In Re  Zebra Technologies Corporation</u> _____

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>5360</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/09/2024</u>

Signature: <u>/s/ Steven D. Moore</u>

Name: <u>Steven D. Moore</u>

Save for Filing

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** _____

**Short Case Caption:** Zebra Technologies Corporation

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___1___ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 08/09/2024

Signature: /s/ Steven D. Moore

Name: Steven D. Moore